UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| WHITLEDGE TREE SERVICE LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:25-cv-00031-CSW-RLY |
| | ) | |
| STATE FARM MUTUAL AUTOMOBILE | ) | |
| INSURANCE COMPANY, | ) | |
| STATE FARM FIRE AND CASUALTY | ) | |
| INSURANCE CO., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON PLAINTIFF'S MOTION TO COMPEL DISCOVERY

Now before the Court is Plaintiff's *Motion to Compel Discovery* (Dkt. 58) and Supporting Brief (Dkt. 59).  Defendants State Farm Automobile Insurance Company and State Farm Fire and Casualty Insurance Co. (collectively, "State Farm") timely filed a *Response in Opposition*.  (Dkt. 68).  Plaintiff timely filed its *Reply*.  (Dkt. 69).  Therefore, the matter is ripe. For the foregoing reasons, the Court **DENIES** Plaintiff's *Motion*.

### I.     BACKGROUND

Following storms that damaged trees on the properties of State Farm insureds, Plaintiff Whitledge Tree Service LLC ("Whitledge") met with property owners to offer their services.  The property owners – three in this instance – signed written contracts to allow Whitledge to remove the damaged trees.  Whitledge's contracts contained a provision in which the property owners agreed to assign their rights to make a claim on their State Farm insurance policies after the work was completed.  Whitledge completed the work and thereafter, billed State Farm for payment.  State Farm paid the claims of the homeowners, but the payments were for less than Whitledge had billed.  State Farm maintains that it properly handled the homeowners' claims in accordance with their policies of insurance.  Whitledge,

claiming status as an assignee, asserts that it stands in the shoes of the homeowners and seeks to recover the balance of the invoices.

Whitledge filed suit against State Farm in Gibson County Superior Court, alleging: (1) breach of contract; (2) tortious breach of the covenant of good faith and fair dealing; and (3) declaratory judgment. State Farm timely removed the action to this Court pursuant to 28 U.S.C. § 1332.  (Dkt. 1).

The relevant timeline of the discovery dispute – which concerns written discovery, insured communications, and the bounds of a 30(b)(6) deposition – is as follows.  Whitledge served its First Set of Interrogatories and First Set of Requests for Production on State Farm on June 23, 2025.  (Dkt. 58 at 1).  State Farm served its answers and objections on December 11, 2025.  (*Id.*).  Rule 33 requires the responding party to "serve its answers and any objections within 30 days after being served with the interrogatories," unless a shorter or longer time is stipulated to by the parties or ordered by the court.  Fed. R. Civ. P. 33(b)(2).  Whitledge contends State Farm's answers and objections were "overdue and produced late, beyond any extension period."  (Dkt. 58 at 1).

Additionally, Whitledge complains of delay and deficiencies with the corporate deposition.  Whitledge "first noticed the deposition of State Farm's corporate designee on November 11, 2025," yet State Farm "objected to portions of the deposition notice in early January."  (*Id.* at 2).  Whitledge notes that State Farm "provided updated objections to almost every topic and all documents requested" on January 26, 2026, and "then refused to designate witnesses on those topics."  (*Id.*).  After a telephonic discovery dispute conference with the Court and guidance provided therein, the deposition of State Farm's Rule 30(b)(6) designee, Kenneth Randolph Jones, occurred on January 28, 2026.  (Dkts. 59 at 2; 59-1).

Whitledge contends the 30(b)(6) designee failed to satisfy State Farm's obligations to adequately prepare and present a knowledgeable deponent.  As such, Whitledge seeks an order requiring State Farm "to provide the documents, information, and appropriately designate a 30(b)(6) deponent in this matter."  (Dkt. 58 at 2-3).

More specifically, Whitledge seeks database information from State Farm. Whitledge explains that "the majority of the discovery at-issue relates to information, training, instruction, internal policies, and communication surrounding State Farm's use (or misuse) of Xactimate." (*Id.*). Xactimate is a database State Farm relies upon for information regarding market pricing. Whitledge contends that it "has obtained testimony and information that confirms State Farm wholly relies on Xactimate to make its decisions regarding price points, and ultimately to pay or not to pay Whitledge's claims." (*Id.*). Whitledge describes the "crux of the issues before the Court" as whether "the rates charged in Whitledge's invoices are reasonable and whether State Farm handled the claims in good faith and fair dealing." (*Id.*). Whitledge contends these determinations turn on whether the use of Xactimate was done in good faith and performed accurately. Whitledge further argues that the Xactimate rates used by State Farm are not reflective of the "emergency conditions that every witness in this case described," and as such, Whitledge is "entitled to test whether the pricing tool State Farm invokes as reasonable is, in fact, anchored to the real-world data it purports to reflect." (Dkt. 69 at 2).

Whitledge also seeks to compel production of certain communications between one of the homeowners and State Farm concerning the claim at issue. State Farm has asserted the insured-insurer privilege over the communications.

Overall, State Farm contends Whitledge's *Motion* should be denied because the requested discovery for Xactimate is not relevant to any viable claim or defense and is disproportionate to the needs of this case. (Dkt. 68 at 2). State Farm further argues that its "privilege assertions for the Meredith communications are proper, and its supplemental production reflects good faith . . . [and] its objections to the Rule 30(b)(6) topics were proper." (*Id.*). State Farm also opposes additional 30(b)(6) deposition testimony and Whitledge's fee request. (*Id.* at 16-17).

The instant *Motion* was filed in compliance with Local Rule 37-1(a). Counsel for Whitledge reports that "between January 13, 2026, and February 10, 2026, the parties had a number of conferences but were unable to resolve their disputes."

(Dkt. 59 at 4). Whitledge contacted the Undersigned's chambers, and a discovery dispute conference was held on January 22, 2026. (Dkt. 52). Following that conference, Whitledge was directed to proceed with the scheduled 30(b)(6) deposition of State Farm on January 27, 2026. (*Id.*). The Parties were granted leave to proceed to motions practice if disputed issues remained after the deposition. (*Id.*). The instant *Motion* followed the State Farm deposition.

## II.    LEGAL STANDARD

The scope of permissible discovery is outlined in Fed. R. Civ. P. 26(b)(1). Specifically, Federal Rule 26(b)(1) provides that civil litigants are entitled to discover "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Such evidence need not be admissible to be discoverable. *West v. Wilco Life Ins. Co.*, 2023 WL 2917059, at *4 (S.D. Ind. Apr. 12, 2023) (citation omitted). Courts have "broad discretion on matters relating to discovery." *Id.*, (citing *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002)). Additionally, Federal Rule 37 provides that a prevailing party may be awarded expenses incurred in making or responding to a motion to compel. Fed. R. Civ. P. 37(a)(5). An award of fees is not authorized if a motion to compel is denied. Fed. R. Civ. P. 37(a)(5)(C).

## III.    DISCUSSION

Federal Rule 37(a)(2)-(3) provides that a "party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses." *Bell v. Pension Comm. of ATH Holding Co., LLC*, 330 F.R.D. 517, 520 (S.D. Ind. 2018). Once the "moving party establishes relevancy of the sought information, the burden shifts 'to the objecting party to show why a particular discovery request is improper.'" *Id.*, (quoting *Gregg v. Local 305 Ibew*, 2009 WL 1325103, *8 (N.D. Ind. May 13, 2009)). The scope of discovery is guided by "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties'

resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

### A. RELEVANCY

Here, State Farm contends Whitledge failed to meet its threshold burden of relevancy. (Dkt. 68 at 2). With regard to Xactimate, Whitledge seeks an order compelling State Farm to produce:

1) Documents and communications related to adjuster training on Xactimate software, use of bid items to pay claims, making line-item adjustments within Xactimate, job aides or other information or training on pricing/estimating cranes and other heavy equipment for claims, and any directives, policies, restrictions, or any State Farm wide communications on how to perform any of the foregoing during the claim process and any documents or communications on claims handling practices for payment on tree removal claims. **The scope applicable is from the time period of January 1, 2020, to present and the geographic limitation is Indiana, Illinois, Michigan, and Kentucky**.

2) Xactimate estimates, unit price change summaries, payment summaries, and any other pricing information used or available to an adjuster to determine what to pay on tree removal claims for Whitledge, all claims identified in Exhibit 7, and any other tree removal claim paid in an amount of $12,000 or above from **the time period of January 1, 2020 to present with a geographic limitation of Indiana, Illinois, Michigan, and Kentucky**.

3) Agreements between Xactimate/Verisk/Xactiware Solutions, Inc. and State Farm as it relates to adjuster use of the Xactimate software suite from the **time period of January 1, 2021, to present with a geographic limitation of Indiana, Illinois, Michigan, and Kentucky**.

   …

(Dkt. 58-1) (emphasis added).

State Farm argues Whitledge's request for "Xactimate price lists, price-change histories, bid-item entries, and tree-removal payment data from 2020 to the present in four states" is irrelevant for two reasons. (Dkt. 68 at 3, 6). First, State Farm asserts that "systemic discovery into how State Farm handled other high-dollar tree claims in four states" does not support Whitledge's claims in this case. Second, State Farm argues that payments on other claims are not relevant to the reasonableness of Whitledge's charges for tree removal services on these claims. (Dkt. 68 at 6-8).

Indeed, payment data for four states spanning more than six years over an untold number of claims is beyond information necessary to resolve disputed issues in this case. Whitledge fails to connect the discovery sought and the claims at hand. Instead, Whitledge seeks Xactimate data for every residential tree removal claim over $12,000 from 2020 to present across four states yet does not demonstrate how this sweeping data set will establish the reasonableness or necessity of Whitledge's charges in *this* case for these *three* homeowners' felled trees. As State Farm contends: the data sought would "merely reflect that payment was issued, under different policies and circumstances, by different adjusters, and for reasons that may include expediency, policy limits, or settlement . . ." (Dkt. 68 at 7). Whitledge's broad discovery request for Xactimate data is unsupported by any link between State Farm's alleged conduct and Whitledge's alleged injury.

### B. PROPORTIONALITY

The scope of discovery must be "proportional to the needs of the case" in light of, among other factors, "the amount in controversy . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Here, Whitledge seeks Xactimate data for *every* residential tree removal claim over $12,000 from 2020 to present across four states. This broad scope is not proportional to the needs of the case. State Farm reports it has produced complete claim files for the three claims at issue, comprising "more than 2,700 pages of claim-

related documents and communications." (Dkt. 68 at 9).  Additionally, State Farm also provided three witnesses for deposition—including the two claim adjusters and a Rule 30(b)(6) designee—resulting in more than 300 pages of sworn testimony. Moreover, the total amount in controversy in this case is $73,422.67, plus potential extra-contractual damage.  The core issues in this case involve whether State Farm underpaid three claims, whether it did so in bad faith under Indiana law, and whether Whitledge's assignments are enforceable.  Indeed, the burden and expense of what Whitledge seeks are extraordinary because it would require State Farm to:

> Identify every residential tree removal claim over $12,000 from 2020 to the present in not only Indiana, but also three states never mentioned in Whitledge's discovery requests: Illinois, Michigan, and Kentucky; [e]xtract and produce the Xactimate price lists, unit price change histories, estimates, bid item entries, and payment summaries associated with each such claim; and [p]roduce internal Xactimate policies, training materials, and contract documents, and present additional Rule 30(b)(6) testimony on those topics.

(*Id.* at 10).

State Farm suggests Whitledge's pursuit of such wide-ranging Xactimate information is for an ulterior purpose, namely in gaining inside information to modify business practices and achieve future successful claims.  (*Id.* at 11). Whitledge's business involves the training of tree removal contractors— including roughly 100 Indiana companies—in how to document jobs and bill insurers.  (*Id.*). State Farm argues that "[s]ix years of multi-state Xactimate price lists and payment histories would be of obvious commercial value to that operation and to the contractors who pay to attend it, regardless of the outcome of this case."  (*Id.*). According to State Farm, Whitledge's deliberate focus on paid claims reveals the true objective: not to understand how State Farm handles claims generally or to challenge how State Farm addressed the claims herein, but to identify what invoice amounts and structures reliably produce payment.  (*Id.* at 12).

Whitledge responds by arguing State Farm "overstates the burden of compliance" because its requested discovery would not require 'file-by-file review of

potentially thousands of claims.'" (Dkt. 69 at 9).  Whitledge maintains "Xactimate is a searchable electronic database . . . and argues State Farm's contention that "'there is no mechanism in Xactimate to search or filter claims by whether they involve tree removal specifically' is unsupported by any affidavit or testimony and directly contradicts the line-item structure of the Xactimate database that its own exhibits display." (*Id*.).  Additionally, Whitledge characterizes State Farm's collateral-purpose argument as "both irrelevant and offensive" and explains that it "seeks paid comparable claims . . . [which are] directly relevant to whether State Farm's Xactimate-generated estimates here undervalue emergency tree-removal work." (*Id*. at 10-11).

The question at bar, however, is not whether State Farm has paid comparable claims.  The questions here center on the enforceability of Whitledge's assignments, the breach of contract contentions, and the bad faith allegations for three claims . . . not State Farm as a whole.

In a case addressing a subpoena for significant claim information, a court from another jurisdiction rejected an attempt to obtain information about unrelated claims.  In *Orchestrate HR, Inc. v. Blue Cross & Blue Shield of Kansas, Inc.*, the court considered a plaintiff's motion for protective order and objections to a defendant's subpoena requests.  No. 19-CV-4007-HLT-TJJ, 2021 WL 1635853, at *5 (D. Kan. Apr. 27, 2021).  Finding a subpoena seeking information that would "encompass nearly 5,700 insurance claims" was not proportional to the needs of the case, the court explained discovery "on [t]he individual decisions on 6,241 insurance claims" had nothing to do with the fraudulent representation claim in the case at bar.  *Id*.  Importantly, the court emphasized the information sought was relevant only to "attempts to investigate potential wrongful denial of insurance benefits claims—claims which are not part of the litigation." *Id*.

Similarly, here, Whitledge seeks Xactimate data for every residential tree removal claim over $12,000 from 2020 to present across four states.  This information is unrelated to the three individual claims at issue.  Therefore, in light of the discovery already provided by State Farm, the amount in controversy, and

the three claims at issue, Whitledge's broad discovery requests for the Xactimate data are not proportional to the needs of the case.  Accordingly, Whitledge's *Motion to Compel* State Farm to produce Xactimate data is **DENIED.**

### C. PRIVILEGE OBJECTIONS

Whitledge also seeks to compel "[u]nredacted communications between Alice Meredith and State Farm." (Dkt. 58-1).  In response, State Farm contends its privilege assertions are proper and notes that following its supplemental production, only two redactions remain at issue.  State Farm describes the withheld communications as "notes created days after Whitledge demanded direct or two-party payment and an email from Meredith after the check was received." (Dkt. 68 at 2, 13).  State Farm notes that Meredith had a first-party homeowners claim with State Farm and argues the Meredith communications are protected under the insurer-insured privilege because the communications are "between an insured and her insurer in the course of a claim." (*Id.*).

The insurer-insured privilege is not recognized by federal law.  However, the Indiana Supreme Court case of *Richey v. Chappell* established the recognition of the insurer-insured privilege in Indiana.[1]  594 N.E.2d 443, 447 (Ind. 1992).  *Richey* provided that "statements from the insured to the insurer concerning an occurrence which may be made the basis of a claim by a third party are protected from disclosure." *Id.*

Whitledge does not address *Richey* in its original brief in support of the *Motion*.  Instead, Whitledge argues generally against application of the privilege and cites Indiana Code § 34-46-3-1, which as State Farm points out, does not even refer to the insured-insurer privilege.  On reply, Whitledge acknowledges State Farm's mention of *Richey*, but does not distinguish its holding.  Instead, Whitledge argues that the record and "conduct in discovery" undermine State Farm's privilege

---

[1] Because this Court is sitting in diversity jurisdiction, "state law applies to substantive issues and federal law governs procedural issues."  *Lockhart v. ExamOne WorldWide, Inc.*, 904 F. Supp. 2d 928, 936 (S.D. Ind. 2012).

position.  Whitledge's arguments are misplaced and fail to address the fundamental issue of applicability of the insured-insurer privilege.

Meredith had a first-party homeowners claim with State Farm. Communications she had with State Farm are communications between an insured and an insurer in the course of the claim.  Though this case is not a case in which State Farm is defending Meredith in a claim against a third party, Whitledge makes no compelling argument to invade the privilege in this case. As such, Whitledge's *Motion to Compel* State Farm's production of the unredacted Meredith communications is **DENIED.**

### D. RULE 30(B)(6) OBJECTIONS

Finally, Whitledge seeks to compel further corporate deposition testimony, specifically: "[a] corporate designee on Whitledge's [Rule] 30(b)(6) notice topics 7, 9, 10, 11." (Dkt. 58-1).  These topics are as follows: internal pricing policies (topic 7), Xactimate training and agreements (topic 9), EULA/Xactimate obligations (topic 10), and documents/information considered for RFA payments (topic 11).  Whitledge asserts Jones' deposition testimony was deficient in that he "could not explain how Xactimate price lists are developed, could not explain how bid items affect published pricing, and could not identify whether Xactimate surveys tree removal companies." (*Id.*).

Responding in opposition, State Farm contends it "scoped its 30(b)(6) testimony to claim-specific issues and produced a prepared corporate witness on every topic for which there was a legitimate and proportional discovery need." (Dkt. 68 at 15-16).  Specifically, State Farm explains that "Topic 7 sought '[a]ll Information, Communications, or Documents regarding internal policies on pricing for tree removal services,' without any limit on time, scope, or geography."  State Farm "objected that the topic lacked the particularity Rule 30(b)(6) requires, sought confidential and proprietary business information, and incorrectly assumed that generic pricing policies govern how individual claims are decided."  Despite these objections, State Farm contends it "designated Jones to testify about the extent to

which the applicable policies provide coverage for tree removal services on the three claims at issue."

Additionally, Whitledge's Topic 9 "sought '[a]ll Documents, Communications, and Information relating to training on or agreements controlling the use of any product or tool' used to calculate what to pay on the claims." State Farm "objected that the topic also lacked the particularity required by Rule 30(b)(6) and raised privilege and trade secret concerns." Despite these objections, as with Topic 7, State Farm maintains it "produced Jones to testify about the portions of the Xactimate estimates relating to tree removal services on the three claims at issue" for Topic 9.

Whitledge's Topic 10 "sought '[a]ll Documents, Communications, and Information related to your obligations to follow any End User License Agreement for any service or tool used on the State Farm Insureds' Claims.'" Again, State Farm "objected that this topic lacked the particularity Rule 30(b)(6) requires . . . [and noted] [t]he topic was also vague, overbroad, and disproportionate." On this objection, State Farm declined to designate a witness for Topic 10.

Finally, Whitledge's Topic 11 "sought '[a]ll Information, Communications, and Documents' State Farm considered when paying 13 tree removal invoices, most from Whitledge, under other policies and by different adjusters." Here, State Farm "objected that payments made on other claims . . . [had] 'no bearing' on whether Whitledge's charges on the three disputed claims were reasonable or necessary." (*Id*.). As with the previous Topic, State Farm also declined to designate a witness for Topic 11.

While it is "not literally possible to depose a corporation, [Rule] 30(b)(6) authorizes litigants to name a business entity as a deponent." *Sanyo Laser Prods. Inc. v. Arista Recs., Inc.,* 214 F.R.D. 496, 502 (S.D. Ind. 2003). As such, "the practical effect of serving a Rule 30(b)(6) notice is to place 'a duty upon the business entity to designate an individual to testify on behalf of the corporation who has knowledge responsive to subjects requested in the Rule 30(b)(6) requests of its opponents.'" *Id.* (quoting *Beloit Liquidating Trust v. Century Indem. Co.,* 2003 WL 355743, *2 (N.D. Ill. Feb.13, 2003)). A 30(b)(6) deposition designee "must testify

-11-

about information known or reasonably available to the organization." *Bell v. Pension Comm. of ATH Holding Co., LLC*, No. 115-CV-02062-TWP-MPB, 2018 WL 7350951, at *2 (S.D. Ind. Aug. 16, 2018). The "'matters for examination' must be described with 'reasonable particularity.'" *Id.* (quoting Fed. R. Civ. P. 30(b)(6)). This court has reasoned that "[b]road topics of inquiry do not 'give rise to an obligation to prepare a witness to answer every conceivable detailed question relating to the topic.'" *Id.* Additionally, "[l]ike other discovery, a 30(b)(6) deposition is limited in scope by Rule 26." *Integra Bank Corp. v. Fid. & Deposit Co. of Maryland*, No. 3:11-CV-00019-RLY, 2014 WL 109105, at *2 (S.D. Ind. Jan. 10, 2014).

Here, State Farm provided a 30(b)(6) deponent who testified on issues within the scope of the three claims at issue. There is no indication the deponent was unprepared to testify on those designated topics. Rather, State Farm raised proper particularity, privilege, and proportionality objections to Whitledge's Topics 7, 9, 10, and 11. Just as Whitledge seeks Xactimate data far beyond the scope of the three claims at issue, Whitledge similarly seeks a 30(b)(6) designee to testify on topics far beyond the scope of this case. Accordingly, Whitledge's request for a 30(b)(6) deponent on notice Topics 7, 9, 10, and 11 is **DENIED.**

### F. REQUEST FOR FEES

Whitledge seeks an award of expenses and attorney's fees under Federal Rule of Civil Procedure 37(a)(5). (Dkt. 59 at 23). State Farm opposes this request. (Dkt. 68 at 16). An award of fees is not appropriate if a motion to compel is denied. State Farm's objections and resistance to overbroad discovery were justified. Therefore, Whitledge's request for expenses and attorney's fees is **DENIED.**

### IV.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Whitledge's *Motion.* To summarize:

- Whitledge's request for an order compelling State Farm to produce Xactimate data is **DENIED.**

-12-

- Whitledge's request for an order compelling State Farm to produce the unredacted Meredith communications is **DENIED.**

- Whitledge's request for a 30(b)(6) deponent on notice Topics 7, 9, 10, and 11 is **DENIED.**

- Whitledge's request for expenses and attorney's fees is **DENIED.**

**SO ORDERED.**

**Date: May 18, 2026**

Crystal S. Wildeman
United States Magistrate Judge
Southern District of Indiana

**Distribution:**

Distributed electronically via ECF to counsel of record.